IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil No. 8:19CV302 |
| vs. | |
| $37,200.00 IN UNITED STATES CURRENCY, | **COMPLAINT FOR FORFEITURE *IN REM*** |
| Defendant. | |

The United States of America, for its cause of action against the defendant property pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

1.      This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

2.      The defendant property consists of $37,200.00 U.S. currency seized from Christopher Emerson on February 1, 2019, during a traffic stop on westbound Interstate 80 near mile marker 390, Lancaster County, Nebraska.  Emerson was driving a white Ford F-250 with Idaho license plates and was the sole occupant.

3.      The U.S. Customs and Border Protection (CBP) currently has custody of the defendant property in Minneapolis, Minnesota.

4.      This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5.    This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

7.    The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

**Facts**

8.    On February 1, 2019, Lancaster County Sheriff's Deputy Jason Henkel, who is part of a joint bulk cash smuggling task force, saw a white Ford F-250 following a truck too closely on westbound I-80 in rural Lancaster County, Nebraska.

9.    Deputy Henkel calculated that the F-250 was following .83 seconds behind a semi-truck.

10.   Deputy Henkel stopped the white Ford F-250 with Idaho license plates near mile marker 390.

11.   Upon initiating the stop, Deputy Henkel saw that there was one person in the white Ford F-250 truck, the driver.

12.   Deputy Henkel approached the driver's side of the truck.

13.   Deputy Henkel identified the driver as Christopher Emerson, from Acampo, California.

2

14.    Emerson indicated that he worked as "horse shoer."

15.    Emerson told Henkel that he was in Syracuse, New York for a blacksmithing convention
       and was going back to California.

16.    Deputy Henkel saw that Emerson appeared to be very nervous, with trembling hands,
       labored breathing and a visible pulse.

17.    Emerson said he just bought the truck about three weeks ago, or a month ago.

18.    Emerson also said the truck was not yet registered in his name and that the truck would
       not pass the smog test, because it did not have a catalytic converter, and was a diesel
       truck.

19.    Emerson explained that the truck was still registered in the name of the "guy" from
       whom he purchased the truck.

20.    Officer John Hudec arrived on the scene soon after the stop.

21.    Officer Hudec checked the vehicle registration against the VIN number in the truck, with
       Emerson's consent.

22.    Officer Hudec saw that the registration documentation did not list Emerson as the
       registered owner of the truck.

23.    Emerson told Officer Hudec that he purchased the truck about a month ago.

24.    Emerson said he worked as a horse shoer and was in Syracuse, New York where there
       was supposed to have been a blacksmithing competition.

25.    Deputy Henkel asked Emerson if there was anything illegal in the vehicle, and Emerson
       quickly answered "absolutely not."

3

26.   Deputy Henkel asked Emerson if there was any marijuana and Emerson responded,
       "nope… nothing."

27.   Deputy Henkel asked Emerson if there was any cocaine in the vehicle and Emerson said,
       "Cocaine? No."

28.   Deputy Henkel asked Emerson if there was any heroin, and Emerson responded,
       "Heroin? Come-on dude."

29.   Deputy Henkel asked Emerson if there was any large amounts of U.S. Currency and
       Emerson hesitated, first making an "Ahhhhhhh" noise and then said, "no sir."

30.   As a result of the foregoing facts, information and responses from Emerson, Deputy
       Henkel and Officer Hudec became suspicious and asked Emerson if they could search the
       truck.

31.   Emerson consented to the search of the truck.

32.   Deputy Henkel and Officer Hudec asked Emerson to move into Officer Hudec's patrol
       vehicle with the window down so that Emerson could withdraw his consent for the search
       at any time, if he chose to do so.

33.   Deputy Henkel began his search on the passenger side of the vehicle and found a suitcase
       on the floorboard.

34.   Deputy Henkel opened the suitcase and immediately found a heat-sealed bag of U.S.
       currency that smelled like marijuana and a large envelope sealed with tape.  Inside the
       envelope, Deputy Henkel found additional bundles of heat-sealed currency.

35.    Deputy Jerod Brabec arrived at the stop and assisted with the search. Deputy Brabec assisted with the search of the suitcase and found a small amount of marijuana in the suitcase.

36.    The currency found in Emerson's suitcase tested positive for marijuana.

37.    In the bed of the truck, the deputies found a large diesel fuel tank that appeared to have hidden compartments.

38.    After the truck was towed to the Lancaster Sheriff's Office, inside one of the compartments in the tank, deputies found another large envelope that matched the one found in the suitcase, containing another heat-sealed bag of bundled currency.

39.    Emerson consented to a search of his mobile phone.

40.    After extracting the data from Emerson's phone, law enforcement found an image of a handwritten price list for high grade strains of marijuana. Law enforcement also found messages suggesting that Emerson made another trip to Florida and New York to sell marijuana in January, 2019. The phone also contained a Google Earth image of a marijuana grow in Grants Pass, Oregon.

41.    While counting the currency found in the suitcase and hidden compartments in the fuel tank, the deputies smelled a moderate odor of marijuana.

42.    The total U.S. currency discovered the white truck was $37,200.00.

43.    While at the Sheriff's office, Deputy Brabec noticed Emerson sweating profusely, was pale, and unresponsive. After Brabec began yelling his name, Emerson was able to open his eyes, but was still largely not able to talk coherently.

44.    Lincoln Fire & Rescue arrived and transported Emerson to the hospital emergency room.

5

45.     Emerson was later admitted to the Bryan West Campus ICU.

46.     The following day, the hospital contacted the Sheriff's office requesting information

        about Emerson and informed law enforcement that Emerson had ingested quite a bit of

        methamphetamine.

47.     Emerson recovered and later submitted a claim to CBP for the defendant property. *See*

        **Exhibit 1**, Emerson Claim, attached hereto.

48.     In response to the requirement that Emerson "[s]tate [his] interest in each item of

        property . . .," Emerson stated, "I claim interest of all money seized."

49.     CBP received Emerson's Claim on April 18, 2019.

### Claim for Relief

50.     The United States repeats and incorporates by reference paragraphs 1 through 49 above.

51.     Property is subject to forfeiture pursuant to 2l U.S.C. § 881(a)(6), which provides for the

        forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value
> furnished or intended to be furnished by any person in exchange for a
> controlled substance or listed chemical in violation of this subchapter, all
> proceeds traceable to such an exchange, and all moneys, negotiable
> instruments, and securities used or intended to be used to facilitate any
> violation of this subchapter.

52.     By the foregoing and other acts, the defendant property constitutes moneys, negotiable

        instruments, securities or other things of value furnished or intended to be furnished by

        any person in exchange for a controlled substance or listed chemical in violation of 21

        U.S.C. § 801, *et seq*., and therefore, is forfeited to the United States pursuant to 21 U.S.C.

        § 881(a)(6).

6

53. By the foregoing and other acts, the defendant property constitutes proceeds traceable to an exchange for a controlled substance or listed chemical in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

54. By the foregoing and other acts, the defendant property constitutes moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE the United States of America prays the defendant property be proceeded against for forfeiture; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney

By: s/ Amy B. Blackburn
Amy B. Blackburn (MO#48222)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
E-mail: amy.blackburn@usdoj.gov

7

## **VERIFICATION**

I, Andrew Vincik hereby verify and declare under penalty of perjury that I am a Special Agent with Homeland Security Investigations (HSI), that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 7 through 55 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of HSI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: **July 8th 2019**

Andrew Vincik
Special Agent
Homeland Security Investigations

8

**U.S. CUSTOMS AND BORDER PROTECTION**
**CAFRA SEIZED ASSET CLAIM FORM**

Name: _Chris Emerson_   Case Number: _2019351200003201_

Address: _8 last E wester Dr._   Telephone No: _(209) 210-1755_
_Acampo CA, 95220_

**IMPORTANT:** **BE SURE TO COMPLETE ALL PARTS BELOW.**
**THIS CLAIM FORM MUST BE SIGNED BY THE CLAIMANT HIS OR HER**
**SELF, NOT BY THE ATTORNEY OR OTHER REPRESENTATIVE ACTING**
**ON BEHALF OF THE CLAIMANT.**

As authorized by Tile 18 U.S.C. § 983(a)(2)(A), I request that the Government file a
complaint for forfeiture on the seized property described below:

**PART I**

List all the items in which you claim an interest.  Include sufficient information to
identify the items, such as serial numbers, make and model numbers, aircraft
numbers, photographs, and so forth.  Attach additional sheets of paper if more space is
needed.    $37,200.00

REC'D FP&F

APR 1 2 2019

Customs & Border Protection
Minneapolis, MN

**PART II**

State your interest in each item of property listed above. Attach additional sheets of paper
if more space is needed.   I claim interest of all money seized

**PART III (ATTESTATION AND OATH)**

I attest and declare *under penalty of perjury* that the information provided in support of
my claim is true and correct to the best of my knowledge and belief.

_Chris Emerson_      _3-28-2019_
Name (Print)                                Date

_[signature]_
Signature

A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO
PROSECUTION UNDER TITLE 18 U.S.C. § 1001 AND/OR TITLE 18 U.S.C § 1621
AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.

(ATT 8-H: Revised November 2014)

**EXHIBIT**
1